# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STORMONT-VAIL HEALTH CARE<br>1500 SW 10th Avenue<br>Topeka, KS 66604-1353 | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| MICHAEL O. LEAVITT<br>Secretary of Health and Human Services<br>200 Independence Avenue, SW<br>Washington, DC 20201 | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

STORMONT-VAIL HEALTH CARE ("Plaintiff"), by and through its undersigned attorneys, brings this action against defendant Michael O. Leavitt, in his official capacity as Secretary of the Health and Human Services, and states as follows:

## A.    Jurisdiction and Venue

1.    This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §§ 1395 et seq.) hereinafter referred to as the "Medicare Act" or the "Act," which establishes the Medicare program (the "Medicare Program" or the "Program"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq. and 28 U.S.C. §1361.

2.      This Court has jurisdiction under 42 U.S.C. § 1395oo(f) and 28 U.S.C. §§1331 and 1361.

3.      Venue lies in this judicial district under 42 U.S.C. § 1395oo(f) and 28 U.S.C. §1391.

**B.    Parties**

4.      STORMONT-VAIL HEALTH CARE (the "Hospital") is located in Topeka, Kansas. The Hospital furnishes inpatient and outpatient hospital services to, *inter alia*, patients entitled to benefits under the Medicare program.

5.      Michael O. Leavitt is the Secretary of Health and Human Services ("HHS"), the federal department which contains the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare program. Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA"). In this Complaint, Hospital will refer to the agency as CMS or HCFA, as appropriate, depending on the context.

**C.    General Background**

6.      The Medicare statute establishes a system of health insurance for the aged, disabled, and individuals afflicted with end-stage renal disease. Pursuant to 42 U.S.C. §1395cc, Hospital entered into a written agreement with Defendant to provide hospital services to eligible individuals.

7.      Under 42 U.S.C. §1395x(v)(1)(A), providers of inpatient hospital services, such as Hospital, are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare patients, in accordance with regulations adopted by the Secretary. Reasonable cost is defined as the "cost actually incurred, excluding therefrom any part of incurred cost found to

be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services." 42 U.S.C. §1395x(v)(1)(A).

8.    In adopting regulations, the statute requires the Secretary to "take into account both direct and indirect costs of providers or services . . . in order that, under the methods of determining costs, the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered." *Id.*  The Secretary has elected to publish many rules implementing the Medicare program in various manuals, such as the Provider Reimbursement Manual.

9.    Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse hospitals, such as Hospital, for inpatient hospital operating costs. *See* 42 U.S.C. §1395ww(d). Effective with cost reporting years beginning on or after October 1, 1991, a complementary PPS process was implemented to reimburse hospitals, such as Hospital, for inpatient hospital capital-related costs. *See* 42 U.S.C. §1395ww(g).

10.    Payment to providers of services is commonly carried out by Medicare fiscal intermediaries, acting as agents of the Secretary pursuant to contracts with him. An intermediary is assigned to each hospital, such as Hospital, that participates in Medicare. Fiscal intermediaries make periodic interim payments to providers, subject to subsequent adjustments for overpayments or underpayments. 42 U.S.C. §1395h. The Hospital's fiscal intermediary is Blue Cross Blue Shield Association and Blue Cross and Blue Shield of Kansas (collectively and individually referred to for convenience as the "Intermediary").

3

11.     At the close of its fiscal year ("FY"), a hospital must submit a "cost report" showing both the cost incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to Medicare. 42 C.F.R. §§ 413.24 and 413.50. The hospital must submit its cost report in compliance with law. The hospital's intermediary is required to analyze and audit the cost report and issue a Notice of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the cost reporting period in compliance with law.

12.     A provider has a right to obtain a hearing before the Provider Reimbursement Review Board ("Board" or "PRRB") by filing an appeal with the PRRB within 180 days of receiving its NPR if the provider "is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of section 1886" of the Medicare Act. *See* 42 U.S.C. § 1395oo(a)(1)(A)(2). The PRRB has jurisdiction over appeals from the Secretary's determinations if the provider is dissatisfied with the Secretary's final determination, the amount in controversy is equal to $10,000 or more, and the provider requests a hearing within 180 days after notice of the Secretary's determination. 42 U.S.C. §1395oo(a).

13.     In the event the intermediary makes further adjustments to a provider's payment after an NPR has been issued, the intermediary issues to the provider a revised NPR. The provider has the right to appeal to the PRRB within 180 days of receipt of a revised NPR. The PRRB *Instructions*[1] provide as follows regarding the right of a provider to appeal to the PRRB from a revised NPR:

> The Board accepts jurisdiction over appeals from a revised Notice of Program Reimbursement (NPR) where the issue(s) in dispute were specifically adjusted by that revised NPR.

---

[1]     The Board *Instructions* is a set of guidelines explaining PRRB practice and procedure which are published on the internet. See http://www.cms.hhs.gov/PRRBReview/Downloads/PRRB_Instructions_March_03.pdf

14.    In addition to the right to appeal to the PRRB, a provider has the right to request reopening of an intermediary's determination, whether an original NPR or a revised NPR, within three years of the date of notice to the hospital of the intermediary's determination.  42 C.F.R. §405.1885(a).  The reopening regulation provides that either a provider or the intermediary may request a reopening within three years following the date of the NPR.

15.    Regardless whether a hospital files for a PRRB hearing or seeks reopening, regulations adopted by the Secretary require an intermediary's determination to be reopened within three years of the date of notice of it to the hospital if CMS notifies the intermediary that the determination is in any way "inconsistent with the applicable laws, regulations, or general instructions" issued by CMS.  42 C.F.R. §405.1885(b).

**D.**    **Procedure for Administrative and Judicial Review of PRRB Decisions**

16.    In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, under 42 C.F.R. § 405.1873 the PRRB is authorized to decide questions relating to its jurisdiction.  The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision.  42 U.S.C. §1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877.  The Secretary has delegated his authority under the statute to review PRRB decisions to the CMS Administrator.

17.    A hospital may obtain judicial review of a final administrative decision, including a decision relating to the jurisdiction of the PRRB, by filing suit within 60 days of receipt in the United

States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.  42 U.S.C. §1395oo(f).

18.    The Supreme Court has held that a decision denying a provider's request for reopening under 42 C.F.R. §1885(a) is not subject to judicial review.  *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449 (1999). However, the Supreme Court did not preclude challenges to the process and standards used when rendering a reopening decision.  *Compare, e.g., Universal Health Servs. of McAllen, Inc. v. Sullivan*, 770 F. Supp. 704, 712 (D.D.C. 1991), *aff'd mem.*, 978 F.2d 745 (D.C. Cir. 1992).

## E.    Medicare's Payment for Disproportionate Share Hospital Adjustment

19.    Under PPS, Medicare's payments to hospitals for inpatient operating costs are based on predetermined, nationally applicable rates, subject to certain payment adjustments.  42 U.S.C. §1395ww(d); 42 C.F.R. Part 412.  One of these adjustments, known as the disproportionate share hospital or "DSH" Adjustment, is available to PPS hospitals that qualify if they serve a disproportionate share of low-income patients.  *See* 42 U.S.C. §1395ww(d)(5)(F).

20.    Under 42 U.S.C. §1395ww(d)(5)(F)(vi), the Secretary is required to make an add-on payment for operating costs for PPS hospitals serving a "significantly disproportionate number of low-income patients," which is computed for a given cost-reporting period based on the sum of two fractions.  For one of these fractions, known as the "Medicaid Low Income Proxy," it is necessary to determine the number of inpatient days that patients who "were **eligible** for medical assistance [*i.e.* Medicaid]" received services at the hospital. 42 U.S.C. §1395ww(d)(5)(F)(vi)(II) (emphasis added).  In general, the more Medicaid inpatient days that a hospital has, the larger its Medicare DSH adjustment will be.

6

21.    A final rule adopted by the Secretary in 1986 established the government's policy for the methodology to be used to count a PPS hospital's Medicaid inpatient days for purposes of determining the DSH adjustment.  *See* 51 Fed. Reg. 16,772 (1986), as codified at 42 C.F.R. §412.106.  This rule limited the number of Medicaid inpatient days to be used to compute the DSH adjustment by allowing hospitals to include only the days:

> … for which benefits are payable under [Medicaid].  Any day of a Medicaid patient's hospital stay that is not payable by the Medicaid program will not be counted as a Medicaid patient day since the patient is not considered eligible for Medicaid coverage on those days.

This final rule impermissibly limited the effect of the DSH statute by allowing hospitals to include only "paid" Medicaid inpatient days, and not all "eligible" Medicaid inpatient days, when computing the DSH adjustment.  This is known as the Secretary's "paid days" policy.

22.    The United States Courts of Appeals for the Fourth, Sixth, Eighth, and Ninth Circuits invalidated the "paid days" policy.  *See Jewish Hosp., Inc. v. Secretary of Health and Human Services*, 19 F.3d 270 (6th Cir. 1994); *Deaconess Health Serv. Corp. v. Shalala*, 83 F.3d 1041 (8th Cir. 1996); *Legacy Emanuel Hosp. and Health Ctr. v. Shalala*, 97 F.3d 1261 (9th Cir. 1996); *Cabell Huntington Hosp. v. Shalala*, 101 F.3d 984 (4th Cir. 1996).  Each of these courts held that the final rule limiting the number of Medicaid inpatient days to those for which payment was made by Medicaid was inconsistent with the Medicare statute on which it was based.  No United States Court of Appeals has upheld the validity of the DSH "paid days" rule.

23.    As a result of these four judicial decisions, the HCFA Administrator formally changed the government's policy in a HCFA Ruling published in accordance with 42 C.F.R. § 401.108.  This Ruling, HCFAR 97-2, was dated February 27, 1997 and provides that, for purposes of the "Medicaid

7

Low Income Proxy," all inpatient hospital days when services were provided to patients **eligible** for Medicaid would be counted, regardless whether the hospital actually received payment from Medicaid for the services rendered on those days. This is known as the Secretary's "eligible days" policy.

24.     By its terms, HCFAR 97-2 is binding on "all HCFA components, Medicare contractors, the Provider Reimbursement Review Board, the Medicare Geographic Classification Review Board, the Departmental Appeals Board, and administrative law judges who hear Medicare appeals."

25.     The Secretary conceded in HCFAR 97-2 that his "paid days" policy was "contrary to the applicable law in four judicial circuits" and acquiesced in those decisions on a national basis.

26.     HCFAR 97-2 also explicitly provides that (1) it is effective for "all cost-reporting periods beginning on or after February 27, 1997" and (2) that all eligible days "may be included" for "cost reports that are settled by fiscal intermediaries on or after" February 27, 1997. However, the Secretary limited the applicability of HCFAR 97-2 to earlier cost years stating that it would only apply to "hospital cost reports which have been settled prior to the effective date of this ruling, but for which the hospital has a jurisdictionally proper appeal pending on this issue."

27.     HCFAR 97-2 also explicitly states that HCFA will not reopen "settled cost reports based on [the DSH] issue." This provision, known as the "reopening prohibition," was invalidated by the United States Court of Appeals for the District of Columbia Circuit in *Monmouth Medical Center ("Monmouth") v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001). The Court invalidated the "reopening prohibition" because it found that, by issuing HCFAR 97-2, the Secretary conceded that DSH payments made under his "paid days" policy were contrary to law. Therefore, the Court held

8

that the "reopening prohibition" was invalid because it conflicted with 42 C.F.R. §405.1885(b), which requires reopening of payment determinations that are "inconsistent with the applicable laws, regulations, or general instructions." *Monmouth*, 257 F.3d at 814-815. Accordingly, the Court found that the Secretary was required under 42 C.F.R. §405.1885(b) to reopen the cost reports at issue in that case to correct the DSH payment and that each of the hospitals in that case was entitled to a writ of mandamus requiring the Secretary to order his intermediaries to do so.

28.     The United States Court of Appeals for the District of Columbia subsequently held in *Leavitt v. Baystate Health Systems*, 414 F.3d 7 (D.C. Cir. 2005)(*cert denied*, 2006 U.S. LEXIS 2717; 74 U.S.L.W. 3559 (April 3, 2006): "the Secretary and intermediaries [have a "mandatory duty"], enforceable by mandamus, to reopen closed Cost Reports even for providers that not only failed to appeal determinations by their intermediaries, but also failed even to seek reopening of those determinations within three years, as required by the only regulation that allows for reopening at the behest of a provider, 42 C.F.R. § 405.1885(a)."

## F.     Facts Applicable to the Hospital

29.     In addition to the Exhibits referenced in this Complaint, the following recitation of material facts is supported by the Administrative Record which the Secretary is required to file with this Court.

30.     On September 27, 2002, the Hospital commenced suit in the this Court , challenging the reopening prohibition in HCFA Ruling 97-2, and contending that under 42 C.F.R. § 405.1885(b), as prescribed by *Monmouth*, the Intermediary had a duty to reopen the Provider's FYE 9/30/95 to assure that the DSH adjustment was determined consistent with HCFA Ruling 97-2. (*Stormont-Vail HealthCare, Inc. v. Tommy G. Thompson, Secretary of Department of Health and Human Services,*

Case No. 02-1917.)

31.     The Secretary entered into a Stipulation of Settlement and Dismissal (the "Settlement Agreement") with the Hospital, providing for a remand to and reopening by the Intermediary to enable the Hospital to submit to the Intermediary Medicaid eligible but unpaid days for purposes of redetermination of the DSH Adjustment to include such days. (Exhibit 1.)

32.     Based on the  Settlement Agreement, the Court dismissed  Case No. 02-1917 by Order signed by the Court on January 3, 2003 and docketed on January 7, 2003. (Docket Entry 11.) (Exhibit 1.)

33.     As provided by the Settlement Agreement, the Hospital's appeal was remanded to the Intermediary to conduct a reopening for the purpose of assuring that, consistent with HCFA Ruling 97-2, all Medicaid days, whether paid or unpaid, were included in the computation of the DSH Adjustment. (Exhibit 1, Paragraph 2.)

34.     Paragraph 5 of the Settlement Agreement reflected that it would be necessary for the Hospital to obtain eligibility verification information from the State of Kansas, and thus expressly provided that the Hospital was not under a deadline to obtain such information: "Because the additional information that the Hospital plans to submit to the intermediary is expected to include information from other entities, including the State of Kansas the Hospital shall have the time necessary to obtain the information that it plans to submit to the Intermediary."

35.     Paragraph 6 of the Settlement Agreement provided that the Hospital had the right to challenge the Intermediary's redetermination of the DSH Adjustment:

> The Hospital shall have the right to challenge the Intermediary's final determination of the Hospital's FY 1995 DSH payment under HCFAR 97-2.

36.     Paragraph 12 of the Settlement Agreement provided in pertinent part as follows that the Hospital and the Secretary retained the right to seek judicial relief in the event of either party's failure to comply with the Settlement Agreement:

> The Court shall have jurisdiction to reinstate this action on motion of any party to resolve a claim of noncompliance with the terms of this Stipulation of Settlement and Dismissal.

37.     Upon remand to and reopening by the Intermediary, the Hospital submitted to the Intermediary additional Medicaid eligible but unpaid days. For 202 days, the required eligibility verification was available from the State of Kansas. For the approximately 750 remaining days, the required eligibility verification information was not then available from the State of Kansas.

38.     Upon information and belief, the Intermediary did not inform the Hospital that in the event the Intermediary issued a revised determination of the DSH Adjustment reflecting the 202 days for which the required eligibility verification was available, the Intermediary would not later issue a further redetermination reflecting inclusion of the 750 remaining days in the event the required eligibility verification was available. On the contrary, the Hospital understood that the Intermediary had no authority to impose a deadline because, as provided by Paragraph 5 of the Settlement Agreement, *supra*, "the Hospital shall have the time necessary to obtain the information that it plans to submit to the Intermediary."

39.    The Intermediary issued a revised determination of the DSH Adjustment dated July 25, 2003 ("Revised NPR"), which included the 202 additional Medicaid eligible but unpaid days submitted by the Hospital for which eligibility verification was available from the State of Kansas, but which included none of the approximately 750 Medicaid eligible but unpaid days for which eligibility verification was not available from the State of Kansas.

40.    The Hospital subsequently obtained from the State of Kansas the necessary eligibility verification with which to support approximately 750 additional Medicaid eligible but unpaid days for purposes of the DSH Adjustment determination (the "Additional Days").

41.    On September 2, 2004, the Hospital submitted to the Intermediary the eligibility verification for Additional Days and requested that the Intermediary further revise the DSH Adjustment to reflect the inclusion of the Additional Days.

42.    The Intermediary refused to redetermine the DSH Adjustment to include the Additional Days. As a result of the Intermediary's refusal to redetermine the DSH Adjustment to include the Additional Days, the Hospital's DSH Adjustment did not include approximately 750 Medicaid eligible but unpaid days and was not computed in accordance with HCFA 97-2. As a result the Hospital suffered a substantial loss of Medicare DHS Adjustment payment to which it was entitled since the Intermediary included only approximately 25% of the Medicaid eligible but unpaid days.

43.    On January 25, 2004, the Hospital timely filed its appeal to the PRRB within 180 days of the July 25, 2003 Revised NPR, challenging the failure of the Intermediary to include the Additional Days in the DSH Adjustment for the Hospital's FYE 9/30/95.

44.     The Intermediary challenged the PRRB's jurisdiction and the PRRB directed the parties to submit their respective jurisdiction briefs.

45.     By decision dated November 4, 2005, the PRRB held that it had jurisdiction over the Hospital's appeal. (Exhibit 2.)  The PRRB unanimously held as follows:

> The Board finds that it has jurisdiction over the inclusion of the number of Medicaid eligible days in the DSH calculation under the provisions of 42 C.F.R. § 405.1869. This regulation allows the Board to affirm, modify or reverse a determination of an intermediary with respect to a cost report and to make other modifications to the cost report even when those matters were not considered by the intermediary. Here, the intermediary was to effectuate a settlement agreement and was specifically directed by CMS to include information from the State of Kansas or other third parties and it was specifically directed not to impose deadlines for submission of information.

46.     The Hospital and the Intermediary entered into and filed a stipulation with the PRRB (the "Stipulation"). (Exhibit 3).  The Stipulation served as the basis for the PRRB to issue a decision on the merits.

47.     Paragraph 5 of the Stipulation memorialized the Intermediary's agreement that "[t]here are additional days that meet the criteria of HCFA 97-2," and that "the Provider submitted support for such additional days to the Intermediary, receipt of which the Intermediary acknowledges."

48.     Paragraph 6 of the Stipulation memorialized the Intermediary's agreement that "an appropriate Board decision under Reg 42 CFR 405.1871 would be a finding that the Provider's DSH payment must be increased to include all additional days that can be identified and verified which meet the criteria of HCFA 97-2 with a remand to determine the precise number of additional days and recalculate the DSH accordingly."

49.     Based on the Stipulation , the PRRB issued a decision dated November 30, 2006 on the merits in favor of the Hospital. (Exhibit 4). The PRRB held as follows:

> The Parties' stipulation reflects their understanding that the Board's jurisdiction decision, when coupled with the stipulation that at least some of the days in dispute meet the HCFAR 97-2 criteria, effectively dictates the Board's determination on the merits and the Board concurs. The purpose of the settlement agreement was to include in the DSH computation all days that are proper under HCFAR 97-2. We also concur that the proper remedy is a remand to the Intermediary for verification of the data submitted to support inclusion of the additional days.

50.     By letter dated December 28, 2006, the Office of Attorney Advisor of the Administrator of CMS notified the Hospital and the Intermediary that, in response to the request of the Intermediary and the Center for Medicare Management, the Administrator of CMS would review the decision of the PRRB. (Exhibit 5. )  As stated in that letter, the sole issue on review was a question of fact as follows:

> Whether the Intermediary's revised Notice of Program Reimbursement issued on July 25, 2003 that increased the Provider's Disproportionate Share Hospital payment, included  all Medicaid eligible days that would qualify for inclusion under HCFA Ruling 97-2.

51.     Thus, as stated by the Office of Attorney Advisor's December 28, 2006 letter, the issue on review was solely the factual issue of whether the July 25, 2003 revised NPR included all Medicaid eligible days required to be included under HCFA Ruling 97-2.  (Exhibit 5.)

52.     On January 31, 2007, the Administrator of CMS issued a decision, received by the undersigned on February 5, 2007, reversing the decision of the PRRB. (Exhibit  6.)

53.     The January 31, 2007 decision of the Administrator of CMS is a final decision of the Secretary over which this Court has jurisdiction.  (Exhibt 6, P. 8.) 42 U.S.C. § 1395oo(f)(1).

54.    This Court also has jurisdiction to hear this case under 28 U.S.C. §1361 because the Hospital is entitled to a writ of mandamus on account of the Intermediary's failure to reopen the Hospital's cost report to include the Additional Days.

55.    This Court also has jurisdiction based on Paragraph 12 of the Settlement Agreement which  provided that " The Court shall have jurisdiction to reinstate this action on motion of any party to resolve a claim of noncompliance with the terms of this Stipulation of Settlement and Dismissal."

## COUNT I

56.    The Hospital hereby incorporates by reference paragraphs 1 - 55 herein.

57.    The Hospital is entitled to issuance of a writ of mandamus under the *Monmouth* decision and the Intermediary's mandatory reopening policy because:

a.    The Hospital has exhausted all administrative remedies and done all it can to vindicate its right to reopening in its effort to obtain proper Medicare DSH payments for Hospital FY 1995  under the Secretary's "eligible days" policy; and

b.    HCFAR 97-2 gave notice to the Secretary's contractors, including the Intermediary, that the DSH payment determinations made under his "paid days" policy were "inconsistent with applicable law;" and

c.    Under 42 C.F.R. § 405.1885(b) and the *Monmouth* decision, the Intermediary has an non-discretionary duty to reopen the Hospital's FY 1995 cost report to correct the improper Medicare DSH  payment determination that it made under the Secretary's unlawful "paid days" policy.

## COUNT II

58.    The Hospital hereby incorporates by reference paragraphs 1 - 57 herein.

The Hospital is entitled to judgment of this Court reversing the decision of the Administrator of CMS and reinstating the decision of the PRRB because:

a.    As stated by the Office of Attorney Advisor's December 28, 2006 letter, the issue on review was solely the issue of whether the July 25, 2003 revised NPR included all Medicaid eligible days required to be included under    HCFA Ruling 97-2.  (Exhibit 5.)

b.    The Intermediary stipulated before the PRRB that  "[t]here are additional days that meet the criteria of HCFA 97-2," and that "the Provider submitted  support for such additional days to the Intermediary, receipt of which the Intermediary acknowledges."  (Exhibit 3.)

c.    The Intermediary is the agent of the Secretary. 42 U.S.C. §1395h.  Thus, the stipulation of the Intermediary constitutes the stipulation of the Secretary.

d.    The standard for review for the Administrator's review of the PRRB's factual decision is whether it was supported by substantial evidence. 42 C.F.R. § 405.1875(c)(2).

e.    The decision of the PRRB regarding the sole factual under review was explicitly based upon and dictated by the Stipulation, and clearly satisfied the "substantial evidence" standard.

f.    The Administrator of CMS erred in reversing the decision of the PRRB, since the decision of the PRRB was based on the Stipulation of the Intermediary acting as the agent of the Secretary and because the decision of the PRRB clearly satisfied the "substantial evidence" standard.

## COUNT III

59.    The Hospital hereby incorporates by reference paragraphs 1 - 58 herein.

The Hospital is entitled to judgment of this Court  reversing the decision of the Administrator of CMS and reinstating the decision of the PRRB because:

a.    In Paragraph  6 of the Settlement Agreement the Secretary agreed  as follows:

The Hospital shall have the right to challenge the Intermediary's final determination of the Hospital's FY 1995 DSH payment under HCFAR 97-2.

b.      Accordingly, the Secretary entered into a binding agreement with the Hospital granting to the Hospital the unqualified right "to challenge the Intermediary's final determination."

c.      It is beyond dispute that the revised NPR at issue in this appeal is "the Intermediary's final determination."

d.      Nothing in Paragraph 6 or in any other provision of the Settlement Agreement limited or qualified the right of the Hospital to challenge the Intermediary's final determination.

e.      An appeal to the PRRB constitutes the only manner by which the Hospital could challenge the Intermediary's final determination.

f.      The Hospital  respectfully submits that the Intermediary and  the Administrator of CMS, and thus the Secretary, are in breach of the Settlement Agreement by (i) failing to include the Additional Days and (ii) opposing, in the case of the Intermediary, and denying, in the case of the Secretary,  the Hospital's right to challenge the Intermediary's determination..

**COUNT IV**

60.      The Hospital hereby incorporates by reference paragraphs 1 - 59 herein. The Hospital is entitled to judgment of this Court reversing the decision of the Administrator of CMS and reinstating the decision of the PRRB because the decision of the PRRB was entirely consistent with well established principles of law governing several, alternative bases for PRRB jurisdiction, as follows:

a.      It is axiomatic that the PRRB enjoys jurisdiction over an appeal filed within 180 days of the date of a final determination with which a provider is dissatisfied if the amount in controversy is at least $10,000.  (42 U.S.C. § 1395oo(a).)

17

     b.      The Hospital filed its appeal within 180 days of the date of the revised NPR, and there is no dispute that more than $10,000 is at stake. Moreover, the Hospital appealed the DSH adjustment set forth in the revised NPR.

     c.      The Hospital was dissatisfied with the DSH Adjustment set forth in the revised NPR. The Intermediary added only 202 of the 952 additional Medicaid eligible days to the DSH adjustment computation. The record demonstrates that the Hospital submitted but that the Intermediary refused to accept 750 Additional Days because the State of Kansas had not released verification data. (See Exhibit 2, Board jurisdiction decision dated November 4, 2005, p.3., n. 4.) The Hospital then again submitted, but the Intermediary continued to refuse to accept, the 750 Additional Days when the State of Kansas had released the verification data.

     d.      The Hospital was dissatisfied with the Intermediary's determination of the DSH Adjustment because approximately 75% of the Medicaid eligible but unpaid days had not been counted. Accordingly, approximately 75% of the corresponding DSH Adjustment was denied.

     e.      The Board properly found that it had jurisdiction under 42 C.F.R. § 405.1869:

> The Board finds that it has jurisdiction over the inclusion of the number of Medicaid eligible days in the DSH calculation under the provisions of 42 C.F.R. § 405.1869. This regulation allows the Board to affirm, modify or reverse a determination of an intermediary with respect to a cost report and to make other modifications to the cost report even when those matters were not considered by the intermediary. Here, the intermediary was to effectuate a settlement agreement and was specifically directed by CMS to include information from the State of Kansas or other third parties and it was specifically directed not to impose deadlines for submission of information. (Exhibit 2.)

     f.      Under well established principles, the PRRB has jurisdiction over any matter

considered by the Intermediary in issuing a determination. *French Hospital v. Shalala*, 89 F.3d 1411 (9th Cir. 1996). Although the revised NPR included only the 202 additional Medicaid eligible days for which the State of Kansas eligibility data was available, the revised NPR reflected that the Intermediary considered, but rejected, the Hospital's request that the 750 other days be included.

g.    Alternatively, even if the Hospital had not submitted the 750 Additional Days to the Intermediary, the PRRB had jurisdiction under the self disallowance principle. The self disallowance doctrine was established by the United States Supreme Court and is recognized by the PRRB. *Bethesda Hospital Association v. Bowen*, 485 U.S. 399 (1988). *See als*o, Board *Instructions.* Under the self disallowance principle, the PRRB has jurisdiction over a cost item that a provider does not claim if claiming the item would be contrary to law. In the instant case, if the Hospital had not claimed the Additional Days because the eligibility verification information was not available, the Hospital, in effect, had self disallowed. Thus, the PRRB would have jurisdiction under the self disallowance principle even if the Hospital had not submitted the Additional Days.

## COUNT V

61.    The Hospital hereby incorporates by reference paragraphs 1 - 60 herein. The Hospital is entitled to an order of this Court reinstating the Hospital's initial appeal before this Court and resolving the Hospital's claim of noncompliance because:

a. Paragraph 12 of the Settlement Agreement provided in pertinent part as follows:

The Court shall have jurisdiction to reinstate this action on motion of any party to resolve a claim of noncompliance with the terms of this Stipulation of Settlement and Dismissal.

b.   The Secretary is in noncompliance with the terms of the Settlement Agreement because the Secretary has denied the right of the Hospital to receive a DSH Adjustment that includes all Medicaid eligible days, whether paid or unpaid, and because the Secretary has denied the Hospital's right to challenge the Intermediary's determination by reversing the decision of the PRRB.

## G.     Requested Relief

WHEREFORE,  the Hospital requests:

1.     The issuance of a writ of mandamus requiring the Secretary to order the Intermediary, or its successor in interest, to reopen the Hospital FY 1995 Medicare cost report and to recalculate the Hospital's Medicare DSH Adjustment payment determination for FY 1995 to include the Additional Days;

2.     An order reinstating the Hospital's appeal before this Court,  a declaration that the Secretary is in noncompliance with the Settlement Agreement by failing to require the Intermediary to include the Additional Days in the DSH Adjustment and an order that the Secretary comply with the Settlement Agreement by ordering  the Intermediary, or its successor in interest, to reopen the Hospital FY 1995 Medicare cost report and to recalculate the Hospital's Medicare DSH Adjustment payment determination for FY 1995 to include the Additional Days;

3.     A  declaration that the CMS Administrator, acting on behalf of the Secretary, breached Paragraph 6 of the Settlement by denying the right of the Hospital to challenge the determination of the Intermediary by reversing the decision of the PRRB,  and an order setting aside the decision of the CMS Administrator and reinstating the decision of the PRRB;

4.     A declaration that the decision of the PRRB, as characterized by the sole factual issued identified by the CMS Administrator upon undertaking review, *i.e.*, whether the July 25, 2003 revised NPR included all Medicaid eligible days to be included under HCFA Ruling 97-2,  was

supported by substantial evidence as witnessed by the Stipulation filed with the PRRB on behalf of the Secretary's agent, the Intermediary, and an order  setting aside the decision of the CMS Administrator and reinstating the decision of the PRRB;

5.    A declaration that the decision of the PRRB was entirely consistent with well established principles of law governing PRRB jurisdiction and an order setting aside the decision of the CMS Administrator and reinstating the decision of the PRRB;

6.    An award of interest relating to the increased DSH Adjustment resulting from the Additional Days, pursuant to 42 U.S.C. § 1395oo(f)(2);

7.    Legal fees and costs of suit incurred by Hospital; and

8.    Such other relief as the Court may deem just and proper.


Respectfully submitted,

Kenneth R. Marcus (D.C. Bar No. MI 0016)
Honigman Miller Schwartz and Cohn LLP
660 Woodward Avenue
2290 First National Building
Detroit, Michigan 48226
(313) 465-7470
(313) 465-7471 (facsimile)
kmarcus@honigman.com

COUNSEL FOR PLAINTIFF
STORMONT-VAIL HEALTH CARE


Date: March 28, 2007


DETROIT.2565984.1

21

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Stormont-Vail Health Care | Michael O. Leavitt, Secretary of Health and Human Services |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**  8888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Kenneth R. Marcus
Honigman Miller Schwartz and Cohn LLP
660 Woodward Avenue, Suite 2290
Detroit, Michigan 48226
313 465 7470

**ATTORNEYS (IF KNOWN)**

Alberto R. Gonzales, Attorney Gen. of U.S.
Jeffrey A. Taylor, U.S. Attorney Dist. of Columbia

---

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question (U.S. Government Not a Party)

◉ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

---

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C. Administrative Agency Review**

☒ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

○ **E. General Civil (Other)**          OR          ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC  7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| **G.** *Habeas Corpus/ 2255* | **H.** *Employment Discrimination* | **I.** *FOIA/PRIVACY ACT* | **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| **K.** *Labor/ERISA (non-employment)* | **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ● 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

42 U.S.C. Sec. 1395oo; 28 U.S.C. Sections 1331 and 1361; appeal of final decision of Secretary of HHS

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** [_____]   Check YES only if demanded in complaint
**JURY DEMAND:**   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

**DATE** March 29, 2007   **SIGNATURE OF ATTORNEY OF RECORD** *[signature]*

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

STORMONT-VAIL HEALTH CARE v. MICHAEL O. LEAVITT, SECRETARY OF
HEALTH AND HUMAN SERVICES

# EXHIBIT 1

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STORMONT-VAIL HEALTH          )
    CARE, INC.,               )
                           )
    Plaintiff,                )
                           )
    v.                        )    Case No. 1:02CV01917 (CKK)
                           )
TOMMY G. THOMPSON, Secretary, )
U.S. Department of Health     )
and Human Services,           )
                           )
    Defendant.                )
_____ )

## STIPULATION OF SETTLEMENT AND DISMISSAL

    1. The parties, Plaintiff Stormont-Vail Health Care, Inc. ("the Hospital") and the

Defendant Secretary of Health and Human Services, do hereby stipulate and agree to

settle the above-captioned action under the terms and conditions set forth herein.

    2. Defendant shall require the Medicare fiscal intermediary for the Hospital, Blue

Cross and Blue Shield of Kansas or its successor in interest ("the Intermediary"),

promptly to reopen the Hospital's Medicare cost report for the Hospital's fiscal year

ending on September 30, 1995 ("FY 1995"); and apply the payment provisions of Health

Care Financing Administration Ruling 97-2 (February 27, 1997) ("HCFAR 97-2") to the

Hospital's FY 1995 Medicare payment adjustment for Hospitals serving a significantly

disproportionate share ("DSH") of low income patients ("Medicare DSH payment").

    3. The Intermediary shall promptly notify the Hospital of the reopening of its FY

1995 Medicare cost report.

4. After the Hospital receives notice of the reopening of its FY 1995 Medicare cost report, the Hospital shall submit any additional information that it believes is necessary for the Intermediary to apply the payment provisions of HCFAR 97-2 to the Hospital's FY 1995 Medicare DSH payment. Because the additional information that the Hospital plans to submit to the Intermediary is expected to include information from other entities, including the State of Kansas the Hospital shall have the time necessary to obtain the information that it plans to submit to the Intermediary.

5. After the Intermediary receives the additional information from the Hospital, to the extent that any additional FY 1995 DSH payment is due to the Hospital under the payment provisions of HCFAR 97-2, the Intermediary shall promptly: (a) recalculate the Hospital's FY 1995 Medicare DSH payment; (b) issue a revised notice of program reimbursement reflecting the recalculated DSH payment for the Hospital's FY 1995; and (c) pay to the Hospital the additional amount due for the Hospital's FY 1995.

6. The Hospital shall have the right to challenge the Intermediary's final determination of the Hospital's FY 1995 DSH payment under HCFAR 97-2.

7. This Stipulation of Settlement and Dismissal shall constitute a full accord and satisfaction of all claims arising from the allegations set forth in the complaint filed in this action, including a full accord and satisfaction of all claims for costs and attorney fees that have been, or could be, made in connection with the administrative process or the proceedings in this action through the filing of this Stipulation of Settlement and

-2-

Dismissal.

8. This Stipulation of Settlement and Dismissal shall not constitute an admission of liability or default on the part of the Defendant Secretary, his agents, servants, or employees, and is entered into for the sole purpose of settling disputed claims and avoiding the expenses and risks of further litigation.

9. The parties and their representatives acknowledge that they fully understand and voluntarily agree to the terms of this Stipulation of Settlement and Dismissal.

10. This Stipulation of Settlement and Dismissal shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

11. The parties agree that this Stipulation of Settlement and Dismissal shall not be used as evidence or otherwise in any pending or future civil or administrative action against the Defendant Secretary, his agents, servants, or employees, except in an action to enforce this Stipulation of Settlement and Dismissal or to establish the terms hereof.

12. This action is dismissed with prejudice, and without costs or attorney fees in accordance with paragraph 7. of this Stipulation of Settlement and Dismissal. The Court shall have jurisdiction to reinstate this action on motion of any party to resolve a claim of

noncompliance with the terms of this Stipulation of Settlement and Dismissal.

Respectfully submitted,

Kenneth R. Marcus          12/6/02
(D.C. Bar No. MI 0016)
Kenneth R. Marcus, P.C.
6960 Orchard Lake Road, Suite 315
West Bloomfield, MI  48322
(248) 865-9955

Counsel for Plaintiff Stormont-Vail
    Health Care, Inc.

ROSCOE C. HOWARD, JR.
(D.C. Bar No. 246470)
United States Attorney

GERARD KEATING
Attorney
U.S. Department of Health
    and Human Services
Office of the General Counsel
Room 5309 Cohen Building
330 Independence Avenue, S.W.
Washington, D.C.  20201
(202) 619-3377

SO ORDERED

On this  3  day of _____ Jan. _____, 2003.

_____
UNITED STATES DISTRICT JUDGE

-4-

STORMONT-VAIL HEALTH CARE v. MICHAEL O. LEAVITT, SECRETARY OF
HEALTH AND HUMAN SERVICES

# EXHIBIT 2



**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671          FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Martin W. Hoover, Jr., Esq.
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West

Refer to

04-0575
CERTIFIED MAIL                                               NOV - 4 2005

Kenneth R. Marcus, Esq.                    Ron D. Smith
Honigman, Miller, Schwartz & Cohn          Medicare Audit & Reimbursement Dept.
2290 First National Bank Building          Blue Cross Blue Shield of Kansas
600 Woodward Avenue                        P.O. Box 3543
Detroit, MI 48226                          Topeka, KS 66601-3543

                    RE: Stormont-Vail Health Care
                        Provider No. 17-0086
                        FYE 9/30/95
                        PRRB Case No. 04-0575

Dear Messrs. Marcus and Smith:

The Provider Reimbursement Review Board (Board) has reviewed the jurisdictional briefs
of the parties in the above-referenced appeal. The decision of the Board is set forth below.

Background

The Provider filed this appeal on January 25, 2004, from a revised Notice of Program
Reimbursement (NPR) dated July 23, 2003. This revised NPR was issued to implement the
Settlement Agreement entered into by the parties subsequent to commencing an action
before the United States District Court for the District of Columbia. Stormont-Vail Health
Care, Inc. v. Thompson. Case No. 1:02CV01917 (CKK).

Federal Court Case

The Board held that it did not have jurisdiction over a group of providers whose requests to
the intermediary to reopen their cost reports to include Medicaid eligible days in their
disproportionate share calculations pursuant to HCFA 97-2 had been denied. The Board
concluded that 42 C.F.R. § 405.1885(c) precluded taking jurisdiction. This case went
forward as Monmouth Medical Center v. Thompson, 257 F. 3d 807 (D.C. Cir. 2001)
(Monmouth). In Monmouth, the Court took mandamus jurisdiction and ordered that the
providers be paid. Subsequent to that ruling a large number of providers filed appeals in
the same venue seeking a similar decision under the doctrine of stare decisis.[1] Stormont-
Vail was among the second group seeking mandamus relief.

---

[1] See. Baystate Healthsystem v. Thompson, 254 F Supp. 2d 80 (2003) (Baystate) aff'd sub nom. In re
Medicare Reimbursement Litig., Baystate Health Systems v. Leavitt, 414 F.3d 7 (D.C. Cir. 2003). The Court
has determined that the 246 actions listed in Appendix A to this Case Management Order involve the same or
similar legal issues. It therefore concludes that consolidation of these cases is appropriate. Furthermore, upon
consideration of the proposed case management plan submitted by counsel for all parties in the 31 previously-
consolidated cases and of the complaints filed in the 215 related cases, and recognizing the logistical burdens

Provider Reimbursement Review Board
Page 2 Kenneth R. Marcus/Ron D. Smith                                      04-0575

During the course of the litigation,[2] the Provider in this case signed a settlement agreement
wherein the Intermediary was to reopen the cost report and apply the provisions of HCFAR
97-2. The ruling requires that days for which patients were Medicaid eligible were to be
included in the DSH calculation.  The settlement agreement included the following
language:

>       After the Hospital receives notice of the reopening of its FY 1995
>       Medicare cost report, the Hospital shall submit any additional
>       information that it believes is necessary for the Intermediary to apply
>       the payment provisions of HCFAR 97-2 to the Hospital's FY 1995
>       Medicare DSH payment.  Because the additional information that the
>       Hospital plans to submit to the Intermediary is expected to include
>       information from other entities, including the State of Kansas[,] the
>       Hospital shall have the time necessary to obtain the information that
>       it plans to submit to the Intermediary.

In addition, the Centers for Medicare & Medicaid's (CMS') Attorney Advisor reiterated
the need for third party information in a January 31, 2003 memorandum to the CMS
Kansas Regional Office.  It stated that the Provider should be given time to obtain
information from the State of Kansas and other third party payors, so no deadline for
submission of the information was to be imposed.[3]

In 2003, the Intermediary reopened the Provider's cost report to include an additional 202
days submitted by the Provider. The Intermediary issued a revised NPR which forms the
basis for this appeal.  Apparently the Provider later received additional information from
the State of Kansas indicating that another 750 days were also Medicaid eligible  See,
Intermediary Ex. I-10 (September 10, 2004 Letter from Provider to the Intermediary
indicating that it had received information regarding unpaid Medicaid days which had not
been accepted until eligibility was verified by the State of Kansas). The Intermediary has
refused to accept this new information.

<u>Positions of the Parties</u>

The Intermediary acknowledges that under the terms of the settlement agreement, the
Provider is allowed to appeal any days it submitted and which the Intermediary refused to
accept. But, the Intermediary argues that it did not disallow any of the DSH days claimed
by the Provider when it reopened its cost report. The additional days the Provider is now
seeking to include in the DSH calculation were days it failed to claim during the

---

plaintiffs' counsel have placed on the Court by filing separate actions instead of one class action lawsuit, the
Court has determined that a global case management plan is necessary in order to effectuate the efficient
disposition of these actions.)
[2] <u>See</u>, <u>Baystate</u> ftnt 1 (The caption in the original Consolidation Order issued by the Court included two
actions in which the parties entered into settlement agreements prior to the Court signing the Consolidation
Order. On January 3, 2003, the Court signed a Stipulation of Settlement and Dismissal, dismissing with
prejudice Stormont-Vail Health Care v. Thompson, Civil Action No. 02-1917. . . . Accordingly, [this hospital
is] no longer part of the consolidated action and shall not appear in the caption.
[3] Intermediary Position Paper, Ex. I-3

Provider Reimbursement Review Board
Page 3 Kenneth R. Marcus/Ron D. Smith                                    04-0575

implementation of the settlement agreement. Consequently, the Intermediary believes there is no determination over which the Board has jurisdiction. It also contends that any appeal must be in the Federal court based on paragraph 12 of the settlement agreement which states that "[t]he Court shall have jurisdiction to reinstate this action on [the] motion of any party to resolve a claim of noncompliance with the terms of this Stipulation of Settlement and Dismissal."

The Provider explains that, during the reopening, the State of Kansas did not initially furnish all of the documentation necessary to assure that all Medicaid eligible patients were included for purposes of computation of the DSH adjustment.[4] The Provider believes the Board has jurisdiction over the appeal from the revised NPR because it is dissatisfied with the DSH calculation. Both the settlement agreement and revised NPR recited that the Provider could appeal to the Board.

Decision of the Board

The Board finds that it has jurisdiction over the inclusion of the number of Medicaid eligible days in the DSH calculation under the provisions of 42 C.F.R. § 405.1869. This regulation allows the Board to affirm, modify or reverse a determination of an intermediary with respect to a cost report and to make other modifications to the cost report even when those matters were not considered by the intermediary. Here, the Intermediary was to effectuate a settlement agreement and was specifically directed by CMS to include information from the State of Kansas or other third parties and it was specifically directed not to impose deadlines for submission of information.

Board Members Participating

    Suzanne Cochran, Esq.
    Gary B. Blodgett, DDS
    Elaine Crews Powell, CPA
    Anjali Mulchandani-West

                                        FOR THE BOARD:

                                        Suzanne Cochran, Esq.
                                        Chairman

cc: Wilson Leong, BCBSA

---

[4] See, Intermediary Jurisdictional Brief Ex. I-6 indicating that the Provider has obtained the information from the State of Kansas establishing eligibility for Medicaid Secondary Payor days which the Intermediary had previously refused to accept because the days had not been verified by the state.

STORMONT-VAIL HEALTH CARE v. MICHAEL O. LEAVITT, SECRETARY OF
HEALTH AND HUMAN SERVICES

# EXHIBIT 3

Before the Provider Reimbursement Review Board

---

Stormont–Vail HealthCare )
                      )
    (Provider) )
                      )
    vs. )
                      )
Blue Cross and Blue Shield Association )
and )
Blue Cross and Blue Shield of Kansas )
a Member of the Blue Cross Blue Shield )
Association, an Association of Independent )
Blue Cross and Blue Shield Plans/Blue Cross )
and Blue Shield Association )
                      )
    (Intermediary) )

PRRB Case No. 04–0575
FYE September 30, 1995
Provider No. 17–0086

---

## STIPULATION OF PROVIDER AND INTERMEDIARY

Bernard M. Talbert
Associate General Counsel
Blue Cross Blue Shield Association
225 North Michigan Avenue
Chicago, IL 60601

Kenneth R. Marcus, Esq.
Honigman Miller Schwartz & Cohn, LLC
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226

Stormont–Vail HealthCare (the "Provider") and Blue Cross and Blue Shield Association, on behalf of itself and Blue Cross and Blue Shield of Kansas (collectively, the "Intermediary"), hereby stipulate as follows:

1.    The issue is:

Whether the Intermediary's Revised Notice of Program Reimbursement issued July 25, 2003, that increased the Provider's DSH payment, included all Medicaid eligible days that would qualify for inclusion under HCFA ruling 97–2?

2.  As a result of litigation between the Provider and the Secretary of the Department of Health and Human Services, A STIPULATION OF SETTLEMENT AND DISMISSAL ("Settlement") was executed and communicated to the Intermediary.  A true and correct copy is attached (Stipulation Exhibit A).

3.  Pursuant to the process described in the Settlement, on July 25, 2003, the Provider submitted to the Intermediary 202 qualifying days, and the Intermediary issued a Revised Notice of Program Reimbursement ("RNPR"). The RNPR advised the Provider of an additional DSH payment of $67,541.

4.  On September 2, 2004, the Provider advised the Intermediary of it's contention that it had identified additional days that met the criteria of HCFA 97–2 in addition to the 202 days referenced in paragraph 3 above.

5.  In response to the September 2, 2004 request referenced in paragraph 4 above, the Intermediary declined to consider any additional days that may qualify under 97–2.

6.  On January 25, 2004, the Provider appealed the RNPR referenced in paragraph 3 above.

7. Subsequent to the PRRB establishing case 04-0575, the Intermediary challenged jurisdiction over the appeal. After considering arguments, the Board determined that jurisdiction was proper in a decision dated November 4, 2005 (Stipulation Exhibit B).

8. There are additional days that meet the criteria of HCFA 97-2. Although the Provider submitted support for such additional days to the Intermediary, receipt of which the Intermediary acknowledges, the exact number can be determined by audit.

9. Respecting that the Provider and Intermediary cannot stipulate to a Board decision, the parties agree, given the Board's assumption of jurisdiction as articulated in its November 4, 2005 jurisdictional decision, that an appropriate Board decision under Reg 42 CFR 405.1871 would be a finding that the Provider's DSH payment must be increased to include all additional days that can be identified and verified which meet the criteria of HCFA 97-2 with a remand to determine the precise number of additional days and recalculate the DSH accordingly.

[Signatures on next page.]

*Respectfully submitted,*

*For the Intermediary*

Bernard M. Talbert, Esq.
Blue Cross and Blue Shield Association
225 North Michigan Avenue
Chicago, IL 60601

Dated: _APRIL 27, 2006_ , 2006

*For the Provider*

Kenneth R. Marcus, Esq.
Honigman Miller Schwartz and Cohn
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226

Dated:  April 27, 2006

DETROIT.2136555.1

STORMONT-VAIL HEALTH CARE v. MICHAEL O. LEAVITT, SECRETARY OF
HEALTH AND HUMAN SERVICES

# EXHIBIT 4

# PROVIDER REIMBURSEMENT REVIEW BOARD
# DECISION
## ON THE RECORD
## 2007-D6

**PROVIDER -**
Stormont-Vail Health Care
Topeka, Kansas

Provider No.: 17-0086

**vs.**

**INTERMEDIARY -**
BlueCross BlueShield Association/
Blue Cross & Blue Shield of Kansas

**DATE OF HEARING –**
August 8, 2006

Cost Reporting Period Ended -
September 30, 1995

**CASE NO.:** 04-0575

## INDEX

| | Page No |
|---|---|
| Issue | 2 |
| Medicare Statutory and Regulatory Background | 2 |
| Statement of the Case and Procedural History | 2 |
| Facts | 4 |
| Findings of Fact, Conclusions of Law and Discussion | 6 |
| Decision and Order | 6 |

CN: 04-0575

ISSUE:

Whether the Intermediary's revised Notice of Program Reimbursement issued on July 25, 2003, that increased the Provider's Disproportionate Share Hospital (DSH) payment, included all Medicaid eligible days that would qualify for inclusion under HCFA Ruling 97-2.

MEDICARE STATUTORY AND REGULATIORY BACKGROUND:

This is a dispute over the amount of Medicare reimbursement due a provider of medical services.

The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (DHHS) charged with administering the Medicare program. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and under interpretive guidelines published by CMS. See, 42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the proportion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

The Medicare statute, Title XVIII of the Social Security Act, 42 U.S.C. §1395 et seq., created a federally funded health insurance program for the elderly and disabled known as Medicare. This case arises under Part A of the Medicare program, which authorizes payments for, inter alia, certain inpatient hospital services and related post-hospital services. See 42 U.S.C. §§1395c, 1395d. The operating costs of inpatient hospital services are reimbursed by Medicare primarily through the Prospective Payment System (PPS). 42 U.S.C. §1395ww(d).

The PPS contains a number of provisions that adjust reimbursement based on hospital-specific factors. See 42 U.S.C. §1395ww(d)(5). This case involves one of the hospital-specific adjustments, the disproportionate share adjustment. The "disproportionate share hospital," or "DSH" adjustment, requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. §1395ww(d)(5)(F)(i)(I). Whether a hospital qualifies for

the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "disproportionate patient percentage." See 42 U.S.C. §1395ww(d)(5)(F)(v). The "disproportionate patient percentage" is the sum of two fractions, the "Medicare and Medicaid fractions," for a hospital's cost reporting period. 42 U.S.C. §1395ww(d)(5)(F)(vi).

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY:

The computation of the numerator of the "Medicaid" fraction is at the heart of this action. This calculation requires a determination of the total number of a hospital's inpatient days attributable to patients who " . . . were <u>eligible</u> for medical assistance under a State plan approved under subchapter XIX of this chapter, but who were not entitled to benefits under Part A of this subchapter [Medicare]." (emphasis added). 42 U.S.C. §1395ww(d)(5)(F)(vi)(II). From 1986 through 1997, the Secretary construed the first portion of this numerator calculation to include only those patients who actually received Medicaid payments from the state. See 42 C.F.R. §412.106(b)(4). Providers challenged this interpretation, and every circuit court that considered the Secretary's interpretation rejected it. The courts of appeals uniformly concluded that the numerator calculation must include all patient days for which a patient was <u>eligible</u> for medical assistance regardless of whether a state Medicaid program actually paid the hospital for services provided to the patient. See <u>Cabell Huntington Hospital, Inc. v. Shalala</u>, 101 F.3d 984, 988 (4th Cir. 1996); <u>Legacy Emanuel Hospital and Health Center v. Shalala</u>, 97 F.3d 1261, 1266 (9th Cir. 1996); <u>Deaconess Health Services Corp. v. Shalala</u>, 83 F.3d 1041, 1041 (8th Cir. 1996); <u>Jewish Hospital, Inc. v. Sec'y Health and Human Services</u>, 19 F.3d 270, 276 (6th Cir. 1994).

In February 1997, the Secretary of DHHS issued a ruling that rescinded the original interpretation of the statutory provision and prospectively mandated that in calculating the disproportionate patient percentage, the Medicaid numerator must include all Medicaid-eligible inpatient days "whether or not the hospital received payment for those inpatient hospital services." Heath Care Financing Administrative Ruling 97-2 at 2 (Feb. 27, 1997). In issuing the Ruling, the Secretary did not concede that the prior interpretation was incorrect. Instead, she stated that "although HCFA believes that its longstanding interpretation of the statutory language was a permissible reading of the statutory language, HCFA recognizes that, as a result of the adverse court rulings, this interpretation is contrary to the applicable law in four judicial circuits." According to the Secretary, the revised interpretation would apply prospectively, "in order to ensure national uniformity in calculation of DSH adjustments." The Ruling also expressly announced that the Secretary would not reopen past NPRs on the basis of this changed statutory interpretation.

In a decision rendered previous to this case, the Board held that it did not have jurisdiction over a group of providers whose request to the intermediary to reopen their cost reports to include Medicaid eligible days in the DSH calculation pursuant to Ruling 97-2 had been denied. That issue was eventually resolved in <u>Monmouth Medical Center v. Thompson</u>, 257 F.3d 807 (D.C.Cir. 2001) (<u>Monmouth</u>). In <u>Monmouth</u>, the court took

mandamus jurisdiction and ordered that the providers be paid. Subsequent to that ruling a large number of providers filed appeals in the same venue seeking a similar decision under the doctrine of *stare decisis*. Stormont –Vail Regional Medical Center (the Provider) was among the second group seeking mandamus relief. During the course of the litigation, the Provider signed a settlement agreement with CMS wherein the Intermediary was to reopen the Provider's cost report and apply the provisions of Ruling 97-2.

FACTS:

The Provider is a general short-term acute care hospital located in Topeka, Kansas.
As noted above, this case arises out of the settlement agreement entered into by the Provider and CMS subsequent to the commencement of an action in the United States District Court for the District of Columbia. Stormont-Vail Health Care, Inc. v. Thompson, Case No. 1:02CV01917 (CKK), Stipulation of Settlement and Dismissal.[1] The settlement agreement provides that the Intermediary is to reopen the Provider's Medicare cost report for the fiscal year ending September 30, 1995 and apply the provisions of HCFAR 97-2. The settlement also contains the following language:

> After the Hospital receives notice of the reopening of its FY 1995 Medicare cost report, the Hospital shall submit any additional information that it believes is necessary for the Intermediary to apply the payment provisions of HCFAR 97-2 to the Hospital's FY 1995 Medicare DSH payment. Because the additional information that the Hospital plans to submit to the Intermediary is expected to include information from other entities, including the State of Kansas[,] the Hospital shall have the time necessary to obtain the information that it plans to submit to the Intermediary.

In addition, CMS' Attorney Advisor reiterated the need for third party information in a January 31, 2003 memorandum to the CMS Kansas Regional Office. Exhibit I-3. It stated that the Provider should be given all the time necessary to obtain information from the State of Kansas and other third party payors. Therefore, no deadline for submission of the information was to be imposed.

Pursuant to the settlement agreement, the Provider submitted to the Intermediary 202 qualifying days. In 2003, Blue Cross Blue Shield of Kansas (the Intermediary) reopened the Provider's cost report to include the additional 202 days submitted by the Provider. The Intermediary then issued the revised NPR which forms the basis of this appeal. The Provider later received additional information from the State of Kansas indicating that another 750 days were also Medicaid eligible. Exhibit I-10 (September 2, 2004 dated letter from the Provider to the Intermediary indicating that it had received information regarding unpaid Medicaid days which had not been accepted until eligibility was

---
[1] Exhibit 1 of Provider's reply to Intermediary's position paper.

verified by the State of Kansas). The Intermediary refused to reopen and incorporate this new information in a revised NPR.

The Provider filed a timely appeal from the Intermediary's 2003 revised NPR. The Intermediary challenged the Board's jurisdiction asserting that it did not disallow any of the DSH days claimed by the Provider when it reopened its cost report. The additional days the Provider is now seeking to include in the DSH calculation were days it failed to claim during the implementation of the settlement agreement. Consequently, the Intermediary asserted that there was no determination over which the Board had jurisdiction.

The Board concluded that it had jurisdiction over the inclusion of the number of Medicaid eligible days in the DSH calculation under the provisions of 42 C.F.R §405.1869. This regulation allows the Board to affirm, modifying or reverse a determination of an intermediary with respect to a cost report and to make other modifications to the cost report even when those matters were not considered by the Intermediary. The Board reasoned that the Intermediary was directed to effectuate a settlement agreement that included information from the State of Kansas or other third parties and it was specifically directed not to impose deadlines for submission of information.

Subsequent to the Board's jurisdiction determination, the parties entered into Stipulations, two of which are especially pertinent to the Board's decision on the merits:

8. There are additional days that meet the criteria of HCFA 97-2. Although the Provider submitted support for such additional days to the Intermediary, receipt of which the Intermediary acknowledges, the exact number can be determined by audit.

9. Respecting that the Provider and Intermediary cannot stipulate to a board decision, the parties agree, given the Board's assumption of jurisdiction as articulated in its November 4, 2005 jurisdictional decision, that an appropriate Board decision under Reg. 42 C.F.R. §405.1871 would be finding that the Provider's DSH payment must be increased to include all additional days that can be identified and verified which meet the criteria of HCFA 97-2 with a remand to determine the precise number of additional days and recalculate the DSH accordingly.

The Provider was represented by Kenneth R. Marcus, Esquire, of Honigman Miller Schwartz and Cohn. The Intermediary was represented by Bernard M. Talbert, Esquire, of Blue Cross Blue Shield Association.

Page 6                                                    CN: 04-0575

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION:

The Parties' stipulation reflects their understanding that the Board's jurisdiction decision, when coupled with the stipulation that at least some of the days in dispute meet the HCFAR 97-2 criteria, effectively dictates the Board's determination on the merits and the Board concurs. The purpose of the settlement agreement was to include in the DSH computation all days that are proper under HCFAR 97-2. We also concur that the proper remedy is a remand to the Intermediary for verification of the data submitted to support inclusion of the additional days.

DECISION AND ORDER:

The Provider's DSH payment must be increased to include all additional days that can be verified as having met the criteria of HCFAR 97-2. The matter is remanded to the Intermediary to determine the number of days that should be included in the determination of Provider's DSH payment and to recalculate the DSH payment accordingly.

BOARD MEMBERS PARTICIPATING:

Suzanne Cochran, Esquire
Gary Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

FOR THE BOARD:

NOV 3 0 2006

Suzanne Cochran
Chairperson

<u>Enclosure</u>

## <u>Final Decision Review and Appeal Information</u>

The Provider Reimbursement Review Board's (Board) decision
becomes final 60 days after the date of receipt by the provider
unless within that time the Administrator of HCFA notifies the
parties of an action taken under the provisions of 42 C.F.R.
§ 405.1875.  If such action is taken, then the Administrator's
decision becomes final 60 days after receipt thereof by the
provider.

Providers are permitted to initiate two actions within specified
time limits.  First, the provider (and/or the intermediary) may
request the Administrator to review a Board decision within 15
days of its receipt.  (See § 405.1875(b)).  Secondly, Section
1878(f) of the Social Security Act ("Act"), 42 U.S.C.
§ 1395oo(f), permits a provider to obtain judicial review of a
final decision of either the Board or the Administrator by filing
a civil action within 60 days of the date on which the provider
receives such decision.  (See also 42 C.F.R. § 405.1877).  For
your convenience, a copy of each of the above-referenced
authorities is enclosed.

Enclosures

§ 405.1875  Administrator's review.

(a) *General rule.* (1) Except for a Board determination under § 405.1842 that it lacks the authority to decide an issue, the Administrator, at his or her discretion, may review any final decision of the Board, including a decision under § 405.1873 about the Board's jurisdiction to grant a hearing. The Administrator may exercise this discretion on his or her own motion, in response to a request from a party to a Board hearing or in response to a request from HCFA.

(2) The Office of the Attorney Advisory will examine the Board's decisions, the requests made by a party or HCFA and any submission made in accordance with the provisions of this section in order to assist the Administrator in deciding whether to exercise this review authority.

(b) *Request for review.* A party or HCFA requesting the Administrator to review a Board decision must file a written request with the Administrator within 15 days of the receipt of the Board decision.

(c) *Criteria for deciding whether to review.* In deciding whether to review a Board decision, either on his or her own motion or in response to a request from a party to the hearing or HCFA, the Administrator will normally consider whether it appears that:

(1) The Board made an erroneous interpretation of law, regulation or HCFA Ruling;

(2) The Board's decision is not supported by substantial evidence; or

(3) The case presents a significant policy issue having a basis in law and regulations, and review is likely to lead to the issuance of a HCFA Ruling or other directive needed to clarify a statutory or regulatory provision;

(4) The Board has incorrectly assumed or denied jurisdiction or extended its authority to a degree not provided for by statute, regulation or HCFA Ruling; and

(5) The decision of the Board requires clarification, amplification, or an alternative legal basis for the decision.

(d) *Decision to review.* (1) Whether or not a party or HCFA has requested review, the Administrator will promptly notify the parties and HCFA whether he or she has decided to review a decision of the Board and, if so, will indicate the particular issues he or she will consider.

(2) The Administrator may decline to review a case or any issue in a case even if a party has filed a written request for review under paragraph (b) of this section.

(e) *Written submissions.* (1) Within 15 days of receipt of a notice that the Administrator has decided to review a Board decision, a party or HCFA may submit to the Administrator, in writing:

(i) Proposed findings and conclusions;

(ii) Supporting views or exceptions to the Board decision;

(iii) Supporting reasons for the exceptions and proposed findings; and

(iv) A rebuttal of the other party's request for review or other submissions already filed with the Administrator.

(2) These submissions shall be limited to issues the Administrator has decided to review and confined to the record of the Board hearing.

(3) A party or HCFA, within 15 days of receipt of a notice that the Administrator has decided to review a decision, may also request that the decision be remanded and state reasons for doing so. Reasons for a request to remand may include new, substantial evidence concerning—

(i) Issues presented to the Board; and

(ii) New issues that have arisen since the case was presented to the Board.

(4) A copy of any written submission made under this paragraph shall be sent simultaneously to each other party to the Board hearing and to HCFA, if HCFA has previously—

(i) Requested that the Administrator review a Board decision or filed a written submission in response to a party's request for review;

(ii) Responded to a party's request for review; or

(iii) Submitted material after the Administrator has announced that he or she will review a Board decision.

(f) *Ex parte communications prohibited.* All communications from any of the parties or HCFA about a Board decision being reviewed by the Administrator must be in writing and must contain a certification that copies have been served on the parties and HCFA, as appropriate. The Administrator will not consider any communication that does not meet these requirements or is not submitted within the required time limits.

(g) *Administrator's decision.* (1) If the Administrator has notified the parties and HCFA that he or she has decided to review a Board decision, the Administrator will affirm, reverse, modify or remand the case.

(2) The Administrator will make this decision within 60 days after the provider received notification of the Board decision and will promptly mail a copy of the decision to each party and to HCFA.

(3) Any decision other than to remand will be confined to—

(i) The record of the Board, as forwarded by the Board;

(ii) Any materials submitted under paragraphs (b) or (e) of this section; and

(iii) Generally known facts that are not subject to reasonable dispute.

(4) The Administrator may rely on prior decisions of the Board, the Administrator and the courts, and other applicable law, whether or not cited by the parties and HCFA.

(h) *Remand.* (1) A remand to the Board by the Administrator vacates the Board's decision.

(2) The Administrator may direct the Board to take further action with respect to the development of additional facts or new issues, or to consider the applicability of laws or regulations other than those considered by the Board. The following are not acceptable bases for remand—

(i) Presentation of evidence existing at the time of the Board hearing that was known or reasonably could have been known;

(ii) Introduction of a favorable court case that was either not available in print at the time of the Board hearing or was decided after the Board hearing;

(iii) Change of a party's representation before the Board;

(iv) Presentation of an alternative legal basis concerning an issue in dispute; or

(v) Attempted retraction of a waiver of a right made before or at the Board hearing.

(3) After remand, the Board will take the action requested in the remand action and issue a new decision.

(4) The new decision will be final unless the Administrator reverses, affirms, modifies, or again remands the decision in accordance with the provisions of the section.

[48 FR 45773, Oct. 7, 1983]

# THE SOCIAL SECURITY ACT AS AMENDED - TITLE XVIII

## Section 1878(f)(1) Judicial Review

(f)(1) A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision. Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received. Providers shall also have the right to obtain judicial review of any action of the fiscal intermediary which involves a question of law or regulations relevant to the matters in controversy whenever the Board determines (on its own motion or at the request of a provider of services as described in the following sentence) that it is without authority to decide the question, by a civil action commenced within sixty days of the date on which notification of such determination is received. If a provider of services may obtain a hearing under subsection (a) and has filed a request for such a hearing, such provider may file a request for a determination by the Board of its authority to decide the question of law or regulations relevant to the matters in controversy (accompanied by such documents and materials as the Board shall require for purposes of rendering such determination). The Board shall render such determination in writing within thirty days after the Board receives the request and such accompanying documents and materials, and the determination shall be considered a final decision and not subject to review by the Secretary. If the Board fails to render such determination within such period, the provider may bring a civil action (within sixty days of the end of such period) with respect to the matter in controversy contained in such request for a hearing. Such action shall be brought in the district court of the United States for the judicial district in which the provider is located (or, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia and shall be tried pursuant to the applicable provisions under chapter 7 of title 5, United States Code, notwithstanding any other provisions in section 205. Any appeal to the Board or action for judicial review by providers which are under common ownership or control or which have obtained a hearing under subsection (b) must be brought by such providers as a group with respect to any matter involving an issue common to such providers.

§ 405.1877   Judicial review.

(a) *General rule.* Section 1878(f) of the Act permits a provider to obtain judicial review of a final decision of the Board, or of a reversal, affirmation, or modification by the Administrator of a Board decision, by filing a civil action pursuant to the Federal Rules of Civil Procedure within 60 days of the date on which the provider received notice of—

(1) A final decision by the Board; or

(2) Any reversal, affirmance, or modification by the Administrator.

The Board's decision is not final if the Administrator reverses, affirms or modifies the decision within 60 days of the date on which the provider received notice of the decision.

(b) *Administrator declines to review a Board decision.* If the Administrator declines to review a Board decision, the provider must file its appeal within 60 days of receipt of the decision of the Board.

(c) *Administrator does not act after reviewing a Board decision.* If the Administrator notifies the parties that he or she has decided to review a Board decision and then does not make a decision within the 60 days allotted for his or her review, this subsequent inaction constitutes an affirmance allowing a provider an additional 60 days in which to file for judicial review, beginning with the date the Administrator's time expires for taking action under § 405.1875(g)(2).

(d) *Matters not subject to judicial review.* Certain matters affecting payments to hospital under the prospective payment system are not subject to judicial review, as provided in section 1886(d)(7) of the Act and § 405.1804.

(e) *Group appeals.* Any action under this section by providers that are under common ownership or control (see § 413.17 of this chapter) must be brought by the providers as a group with respect to any matter involving an issue common to the providers.

(f) *Venue for appeals.* An action for judicial review must be brought in the District Court of the United States for the judicial district in which the provider is located (or, effective April 20, 1983, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia. Effective April 20, 1983, any action for judicial review by providers under common ownership or control (§ 413.17 of this chapter), must be brought by such providers as a group with respect to any matter involving an issue common to the providers.

(g) *Service of process.* Process must be served as described under 45 CFR part 4.

[48 FR 39836, Sept. 1, 1983, as amended at 48 FR 45774, Oct. 7, 1983; 51 FR 34793, Sept. 30, 1986]

(a)    General rule

Section 1878(f) of the Act permits a provider to obtain judicial review of a final decision of the Board, or of a reversal, affirmation, or modification by the Administrator of a Board decision, by filing a civil action pursuant to the Federal Rules of Civil Procedure within 60 days of the date on which the provider received notice of--

(1)    A final decision by the Board; or

(2)    Any reversal, affirmance, or modification by the Administrator.

The Board's decision is not final if the Administrator reverses, affirms or modifies the decision within 60 days of the date on which the provider received notice of the decision.

(b)    Administrator declines to review a Board decision

If the Administrator declines to review a Board decision, the provider must file its appeal within 60 days of receipt of the decision of the Board.

(c)    Administrator does not act after reviewing a Board decision

If the Administrator notifies the parties that he or she has decided to review a Board decision and then does not make a decision within the 60 days allotted for his or her review, this subsequent inaction constitutes an affirmance allowing a provider an additional 60 days in which to file for judicial review, beginning with the date the Administrator's time expires for taking action under Section 405.1875(g)(2).

(d)    Matters not subject to judicial review

Certain matters affecting payments to hospital under the prospective payment system are not subject to judicial review, as provided in Section 1886(d)(7) of the Act and Section 405.1804.

(e)    Group appeals

Any action under this section by providers that are under common ownership or control (see Section 405.427) must be brought by the providers as a group with respect to any matter involving an issue common to the providers.

(f)    Venue for appeals

An action for judicial review must be brought in the District Court of the United States for the judicial district in which the provider is located (or, effective April 20, 1983, in an action brought jointly by several providers, the judicial district in which the greatest number of such providers are located) or in the District Court for the District of Columbia. Effective April 20, 1983, any action for judicial review by providers under common ownership or control (Section 405.427), must be brought by such providers as a group with respect to any matter involving an issue common to the providers.

(g)    Service of process

Process must be served as described under 45 CFR Part 4.

(41 FR 52051, Nov. 26, 1976. Redesignated at 42 FR 52826, Sept. 30, 1977 amended at 48 FR 39836, Sept. 1, 1983; 48 FR 45774, Oct. 7, 1983)

STORMONT-VAIL HEALTH CARE v. MICHAEL O. LEAVITT, SECRETARY OF
HEALTH AND HUMAN SERVICES

# EXHIBIT 5

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Phone 410-786-3176 Facsimiles 410-786-0043



**Office of the Attorney Advisor**

**VIA FACSIMILE**

DEC 2 8 2006

Kenneth R. Marcus
Honigman, Miller, Schwartz & Cohn
2290 First National Bank Building
600 Woodward Avenue
Detroit, MI 48226

Re:   Stormont-Vail Health Care, PRRB Decision No. 2007-D6 (11/30/06) (FYE 09/30/95)

Dear Mr. Marcus:

This is to notify you that our office has received your comments requesting that the Administrator not review the above referenced case. Comments were also received from the Intermediary and the Centers for Medicare & Medicaid Services' (CMS') Center for Medicare Management requesting that the Administrator reverse the Provider Reimbursement Review Board's decision in the above reference case.

Accordingly, the Administrator of CMS will review the Board's decision concerning whether the Intermediary's revised Notice of Program Reimbursement issued on July 25, 2003, that increased the Provider's Disproportionate Share Hospital payment, included all Medicaid eligible days that would qualify for inclusion under HCFA Ruling 97-2. Involved will be whether the Board's decision is in keeping with the pertinent laws, regulations, and other criteria cited by the Board and by the parties in their comments. The Board's decision will be reviewed in light of prior decisions of the Administrator and relevant court decisions. Accordingly, this case will be before the Administrator within the next few weeks to determine whether to reverse, affirm, modify or remand the Board's decision.

The governing regulations published at 42 C.F.R. § 405.1875 explains the procedures in conducting final agency review of decisions made by the Board. You have a right to submit comments within 15 days of your receipt of this letter. **If you do submit comments, we would appreciate your faxing them to this office at (410) 786-0043, in order to ensure receipt of the comments by this office.** An Administrator's decision

must be rendered within 60 days after the Provider received the Board's decision.    I will promptly send you a copy of the decision after it is rendered.

                                         Sincerely,

                                           Jacqueline R. Vaughn
                                           Attorney Advisor

Cc:    Bernard M. Talbert, Esq., Intermediary's Representative
        Center for Medicare Management, CMS

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop C3-01-20
Baltimore, Maryland 21244-1850
Phone 410-786-3176 Facsimiles 410-786-0043



**Office of the Attorney Advisor**

**VIA FACSIMILE**

DEC 2 8 2006

Bernard M. Talbert
Blue Cross and Blue Shield Association
225 N. Michigan Avenue
Chicago, Il 60601-7680

Re:    <u>Stormont-Vail Health Care</u>, PRRB Decision No. 2007-D6 (11/30/06) (FYE 09/30/95)

Dear Mr. Talbert:

This is to notify you that our office has received your comments and comments from the Centers for Medicare & Medicaid Services' (CMS') Center for Medicare Management requesting that the Administrator reverse the Provider Reimbursement Review Board's decision in the above reference case. Comments were also received from the Provider.

Accordingly, the Administrator of CMS will review the Board's decision concerning whether the Intermediary's revised Notice of Program Reimbursement issued on July 25, 2003, that increased the Provider's Disproportionate Share Hospital payment, included all Medicaid eligible days that would qualify for inclusion under HCFA Ruling 97-2. Involved will be whether the Board's decision is in keeping with the pertinent laws, regulations, and other criteria cited by the Board and by the parties in their comments. The Board's decision will be reviewed in light of prior decisions of the Administrator and relevant court decisions. Accordingly, this case will be before the Administrator within the next few weeks to determine whether to reverse, affirm, modify or remand the Board's decision.

The governing regulations published at 42 C.F.R. § 405.1875 explains the procedures in conducting final agency review of decisions made by the Board. You have a right to submit comments within 15 days of your receipt of this letter. **If you do submit comments, we would appreciate your faxing them to this office at (410) 786-0043, in order to ensure receipt of the comments by this office.** An Administrator's decision

must be rendered within 60 days after the Provider received the Board's decision.    I will promptly send you a copy of the decision after it is rendered.

Sincerely,

Jacqueline R. Vaughn
Attorney Advisor

Cc:     Kenneth R. Marcus, Esq., Provider's Representative
Center for Medicare Management, CMS

STORMONT-VAIL HEALTH CARE v. MICHAEL O. LEAVITT, SECRETARY OF
HEALTH AND HUMAN SERVICES

# EXHIBIT 6

# CENTERS FOR MEDICARE AND MEDICAID SERVICES

## *Decision of the Administrator*

| In the case of: | Claim for: |
|---|---|
| **Stormont-Vail Health Care** | **Provider Cost Reimbursement Determination for Cost Reporting** |
| Provider | **Period Ending: 09/30/95** |
| vs. | |
| **Blue Cross Blue Shield Association/ Blue Cross & Blue Shield of Kansas** | **Review of: PRRB Dec. No. 2007-D6 Dated: November 30, 2006** |
| **Intermediary** | |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in § 1878(f) (1) of the Social Security Act (Act), as amended (42 USC 1395oo (f)). The Center for Medicare Management (CMM) and the Intermediary submitted comments, requesting reversal of the Board's decision. The Provider submitted comments requesting that the Administrator not review the Board's decision. The parties were notified of the Administrator's intention to review the Board's decision. The Provider subsequently submitted further comments requesting that the Administrator affirm the Board's decision. All comments were timely received. Accordingly, this case is now before the Administrator for final agency review.

## BACKGROUND

This case arises out of the settlement agreement entered into by the Provider and Department of Health and Human Services subsequent to the commencement of an action in the United States District Court for the District of Columbia. Stormont-Vail Health Care, Inc. v. Thompson, Case No. 1:02CV01917 (CKK)[1]  The settlement

---

[1] Stipulation of Settlement and Dismissal, dated January 3, 2003.

2

agreement provides for the Hospital to submit additional information regarding Medicaid days and that the Intermediary is to promptly issue a revised notice of program reimbursement (NPR) for the fiscal year ending September 30, 1995, applying the provisions of HCFAR 97-2, and make payment. The settlement in particular states that:

> 4. After the Hospital receives notice of the reopening of its FY 1995 Medicare cost report, the Hospital shall submit any additional information that it believes is necessary for the Intermediary to apply the payment provisions of HCFAR 97-2 to the Hospital's FY 1995 Medicare DSH payment. Because the additional information that the Hospital plans to submit to the Intermediary is expected to include information from other entities, including the State of Kansas, the Hospital shall have the time necessary to obtain the information that it plans to submit to the Intermediary.

> 5. After the Intermediary receives the additional information from the Hospital, to the extent that any additional FY 1995 DSH payment is due to the Hospital under the payment provisions of HCFAR 97-2, the Intermediary shall promptly: (a) recalculate the Hospital's FY 1995 Medicare DSH payment; b) issue a revised notice of program reimbursement reflecting the recalculated DSH payment for the Hospital's FY 1995; and (c) pay to the Hospital the additional amount due for the Hospital's FY 1995.

> 6. The Hospital shall have the right to challenge the intermediary's final determination of the Hospital's FY 1995 DSH payment under 97-2

Pursuant to the settlement agreement, the Provider submitted to the Intermediary a request to add 202 qualifying days by cover dated June 23, 2003 (Intermediary Exhibit I-5) to the DSH calculation and requested a sum certain payment amount. The Intermediary promptly issued a revised NPR showing the inclusion of the additional 202 days submitted by the Provider on July 25, 2003 and payment of the Provider's requested amount.

The Provider subsequently appealed the revised NPR to the Board by letter dated January 25, 2004, challenging the Intermediary's failure to include "as Medicaid-eligible days services to patients for Medicaid as well as patients eligible for general assistance days." By letter dated August 20, 2004, to the Board, the Provider requested to add and transfer to group appeals certain other DSH issues involving MediKan days and spend down days." By letter dated September 2, 2004, to the Intermediary, the Provider requested that the Intermediary reopen the cost report

and reflect additional days involving Medicaid Secondary payor days based on recent documentation from the State of Kansas.[2]  The parties agreed that the Intermediary declined to reopen the cost report to include these days.[3]

The Intermediary challenged the Board's jurisdiction over the revised NPR asserting that it did not disallow any of the DSH days claimed by the Provider when the Intermediary reopened its cost report.  The additional days the Provider now sought to include in the DSH calculation were days the Provider failed to request during the implementation of the settlement agreement.  Consequently, the Intermediary asserted that there was no adverse determination over which the Board had jurisdiction.

The Board held that it had jurisdiction over the inclusion of the number of Medicaid eligible days in the DSH calculation under 42 CFR 405.1869.  This regulation, the Board maintained, gives it jurisdiction to affirm, modify, reverse a determination of an intermediary with respect to a cost report and to make other modifications to the cost report even when those matters were not considered by the intermediary.  The Board found that the Intermediary was to effectuate a settlement agreement and was specifically directed that it was not to impose deadlines for submission of information.

## ISSUE AND BOARD'S DECISION

The issue before the Board was whether the Intermediary's revised Notice of Program Reimbursement (NPR) issued on July 25, 2003, that increased the Provider's Disproportionate Share Hospital (DSH) payment, included all Medicaid eligible days that would qualify for inclusion under HCFA Ruling 97-2.

After concluding that it had jurisdiction in this case, the Board held that the Provider's DSH payment must be increased to include all additional days that can be verified as having met the criteria of HCFAR 97-2.  As such, the Board remanded the matter to the Intermediary to determine the number of days that should be included in

---

[2]  See, e.g.., Intermediary Exhibit I-10.  Provider's letter dated September 2, 2004 to the Intermediary indicating that it had received information regarding unpaid Medicaid days which had not been accepted until eligibility was verified by the State of Kansas.  It does not appear that the State documentation was included in the record by either party.

[3]  It does not appear such correspondence was made a part of the record.

the determination of Provider's DSH payment and to recalculate the DSH payment accordingly.

## SUMMARY OF COMMENTS

CMM commented requesting that the Administrator reverse the Board's decision. Specifically, CMM stated that the Intermediary should not reopen the Provider's revised NPR in order to include additional days submitted by the Provider for purposes of DSH. The Intermediary acted in accordance with the settlement agreement and did not impose any time limit on the Provider to submit additional Medicaid eligible days before the Intermediary issued a revised NPR. Essentially, CMM stated that the Provider is not "dissatisfied" with any decision of the Intermediary, as that term is used by the Medicare Act to define actions that give rise to Board jurisdiction.

The Provider commented requesting first that the Administrator not review the Board's decision and, later, that the Administrator affirm the Board's decision. The Provider stated that the Board's decision reflects and is fully consistent with the Stipulation of Settlement and Dismissal between the Provider and the Secretary of the Department of Health and Human Services and the Intermediary. The Provider asserted that there is no dispute that the total number of Medicaid eligible days total 952, but due to a delay in receiving data from the State of Kansas, the Provider only submitted 202 Medicaid eligible days.

The Provider argued that the Settlement Agreement grants the Provider the right to "challenge the Intermediary's final determination." Therefore, since the revised NPR at issue is the Intermediary's final determination, the Provider has the right to appeal and challenge that decision. The Provider also argues that the Board has jurisdiction to review the appeal of the revised NPR since it has met all the criteria and is dissatisfied with the Intermediary's DSH adjustment computation.

The Intermediary submitted comments requesting that the Administrator vacate the Board's decision and dismiss the appeal for lack of jurisdiction. The Intermediary argued that the revised NPR is final and contained all the Medicaid eligible days submitted by the Provider. The Provider was not under any deadline to make any submission to the Intermediary and had the opportunity to submit complete and accurate data for inclusion in the revised NPR. Therefore, the Provider has no issue to dispute or dissatisfaction that triggers an appeal of the revised NPR, since there was no disallowance made to the Provider.

## DISCUSSION

The entire record, which was furnished by the Board, has been examined, including all correspondence, position papers, and exhibits. The Administrator has reviewed the Board's decision.    All comments received timely are included in the record and have been considered.[4]

Section 1878(a) of the Social Security Act and the regulations at 42 C.F.R. § 405.1835 set forth the certain requirements for Board jurisdiction.  A provider may obtain a hearing before the Board with respect to its fiscal intermediary's determination of its cost report, inter alia, only if: the provider is dissatisfied with a final determination of its fiscal intermediary as to the amount of reimbursement due the provider for the period covered by such report; there is $10,000 or more in controversy; and the provider filed a request for a hearing within 180 days after the notice of the intermediary's final determination.[5] Further, Section 405.1801(a)(3) states that for purposes of appeal to the Board, "intermediary determination" is synonymous with "final determination of the Secretary." Such an intermediary determination is referred to as a notice of program reimbursement or "NPR."

Certain procedures not contemplated by the statute are set forth in the regulation.  The regulation at 42 C.F.R. § 405.1885(a) allows for a reopening of a determination or an NPR if "made within 3 years of the date of the notice of the intermediary determination." In addition, the regulation found at § 405.1889 provides that:

> Where a revision is made in a determination or decision on the amount of program reimbursement after such determination or decision has been reopened as provided in § 405.1885, such revision shall be considered a

---

[4] The Provider states that review of jurisdiction by the Administrator would be inappropriate as the notice of review did not specifically identify that issue. However, the notice was broadly drafted as a review of the Board's decision of which jurisdiction was a component and the Provider acknowledged and responded to the comments submitted by Intermediary and CMM that raised the issue of jurisdiction. Therefore, the Provider had notice of, and responded to, this issue in its comments and such review is not prohibited by the Administrator.

[5] The Board may also take jurisdiction of late-filed appeals "for good cause shown" (42 C.F.R. § 405.1841(b)).

> separate and distinct determination or decision to which the provisions of
> §§ 405.1811, 405.1835, 405.1875 405.1877 are applicable.[6]

The right to appeal a revised NPR is strictly a regulatory right under 42 CFR 405.1889.    The regulation at 42 CFR 405.1889 specifically incorporates 42 CFR 405.1835, which also in turn references 405.1841(a)(1).  Notably, 42 CFR 405.1841(a)(1) specifies that "such request for Board hearing must identify that aspects of the determination with which the provider is dissatisfied. ..." Consequently, the regulatory right to appeal under 42 CFR 405.1889 as referenced in 405.1841(a)(1) requires a provider to meet a dissatisfaction requirement in order for Board jurisdiction to be met.

The Administrator, after reviewing the record and the relevant law, regulations, and governing criteria, finds that the Board acted improperly in accepting jurisdiction as the additional days the Provider now wants to include in the DSH calculation were not at issue in the revised NPR.   The Administrator finds that 42 C.F.R. § 405.1889 bars the Provider from using the revised NPR as the vehicle for an appeal to now include those days.   The regulation at 42 C.F.R. § 405.1889 provides that "such revision shall be considered a separate and distinct determination" for which the Provider has a right to a hearing, but only those matters adjusted in such a determination.

In accordance with the terms of the settlement agreement, the Provider submitted its list of Medicaid eligible, unpaid days on June 23, 2003. The Intermediary, also in accordance with the settlement agreement, on July 25, 2003 promptly issued a revised NPR making payment for all the days requested in the Provider's submission. The Intermediary's reopening of the Provider's cost report in order to include all of the additional Medicaid days that the hospital submitted in 2003, and its issuing of a revised NPR based on the inclusion of those additional days constitutes a separate and distinct determination which granted the Provider the full relief it requested without any disallowances.  The matter of the additional days was never raised or requested by the Provider prior to the issuance of the revised NPR and, likewise, was not addressed by the Intermediary's determination as reflected in the revised NPR. Thus, these days were not part of the  separate and distinct determination which comprises the revised NPR that is basis for any Board review.

---

[6] See also  § 2932B of the Provider Reimbursement Manual.

In addition, there is no disallowance reflected by the revised NPR that causes Provider "dissatisfaction" with any decision of the Intermediary, as that term is used by the regulation to define actions that give rise to Board jurisdiction. Rather, the Provider's "dissatisfaction" stems from the Intermediary's subsequent decision not to reopen the revised NPR and include the additional Medicaid days. There is no adverse Intermediary action contained in the revised NPR that would allow for review by the Board since the Intermediary gave the Provider all the Medicaid eligible, unpaid days that it requested.[7] Further, to the extent the Provider's appeal can be interpreted as an intent to appeal the Intermediary's decision not to reopen the previously issued NPR, that decision is not subject to review.[8] Finally, contrary to the Provider's contentions, the language in the settlement agreement did not modify, limit, or expand the controlling regulation with respect to the appeal of a revised NPR under 42 CFR 405.1889. Subsequently, the Board's jurisdiction in this case is properly evaluated under the criteria set forth in that regulation.

---

[7] While the terms of the settlement agreement are not properly before the Board, even assuming *arguendo* that they were, the Administrator notes that the Intermediary's application of the agreement appears consistent with the paragraph (5) requirement that the Intermediary "promptly" issue a revised NPR and make payment upon the Hospital's submission of "the" additional information. That is, under the agreement, the submission of the additional information by the Hospital "triggers" the responsibility of the Intermediary to promptly act and issue a revised NPR and make payment. The Provider fails to reconcile its interpretation of the agreement (that the Provider may make several open-ended submissions of additional information) with the requirement that the Intermediary "promptly" issue a revised NPR and make (final) payment once "the" additional information is submitted.

[8] *See* Your Home Visiting Nurse Services v. Shalala, 525 U.S. 449 (1999).

8

## <u>DECISION</u>

Accordingly, the Administrator vacates the Provider Reimbursement Review Board decision consistent with this opinion. The Provider's request for a hearing before the Board is dismissed for lack of jurisdiction.

**THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES.**

Date: 1\26\07            Herb B. Kuhn
                         Herb B. Kuhn
                         Acting Deputy Administrator
                         Centers for Medicare & Medicaid Services